**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOHN G. BOWLES,**

    **Plaintiff,**

              **5:05-CV-266**
**v.**              **(NAM/GJD)**

**JOANNE B. BARNHART**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**
_____

**APPEARANCES:**           **OF COUNSEL:**

*For Plaintiff*
McMahon, Kublick & Smith, P.C.      Jennifer Gale Smith, Esq.
500 South Salina Street
Suite 816
Syracuse, New York 13202

*For Defendant*
Glenn T. Suddaby           William H. Pease
United States Attorney for the       Assistant United States Attorney
Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

Office of General Counsel         Barbara L. Spivak
Social Security Administration       Chief Counsel, Region II
26 Federal Plaza
New York, New York 10278        Andreea Lechleitner
                      Assistant Regional Counsel

**Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

I.     INTRODUCTION

This action, brought by an unsuccessful claimant for disability benefits, requires the Court to determine whether the Commissioner of Social Security (the "Commissioner") properly concluded that the claimant, although severely impaired, was not entitled to such benefits because of his remaining ability to perform light work.  The defendant subsequently moved for judgement affirming the Commissioner's final determination of non-disability.  The Court referred this matter to United States Magistrate Judge Gustave J. DiBianco pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(d).  Magistrate Judge DiBianco reported that the Commissioner's decision was supported by substantial evidence, and recommended that the Court uphold the denial of benefits.  The claimant now objects to Magistrate Judge DiBianco's Report and Recommendation, arguing that the Commissioner's determination of non-disability was improper because it was not supported by substantial evidence, and was based upon an erroneous application of the treating physician rule.

The Court, having considered the Report and Recommendation, the objections thereto, and the entire administrative record, finds that the Commissioner's determination of non-disability was supported by substantial evidence.  Furthermore, the Commissioner properly applied the treating physician rule when evaluating the claimant's petition for disability benefits.  The Court therefore adopts Magistrate Judge DiBianco's Report and Recommendation, grants the defendant's motion for judgment on the pleadings, and dismisses the claimant's complaint in its entirety.

## II. BACKGROUND

The Report and Recommendation sets forth a detailed examination and summary of the evidence contained in the administrative record.  Neither party has objected to Magistrate Judge DiBianco's recitation of the background in this case.  Therefore, the Court adopts the portion of the Report and Recommendation entitled "Facts" in its entirety.

## III. PROCEDURAL HISTORY

The claimant, John G. Bowles, was born on June 4, 1956, and was 48 years old at the time of the administrative hearing in 2004.  (T. 16).  Mr. Bowles was employed as a roofer from 1973 until 1990.  (T. 104).  He first applied for disability benefits on July 8, 1992.  (T. 37).  The claimant was found disabled under the Social Security Act (the "Act") on September 21, 1992 due to substance abuse and a personality disorder.  (T. 37).  Mr. Bowles received disability benefits until January of 1996, when the Social Security Administration (the "Administration") determined that the impairments leading to his disability had shown medical improvement such that he was capable of performing light work.  (T. 43).

Mr. Bowles protectively filed an application for Disability Insurance Benefits and Supplemental Security Income on September 8, 2003.  (T. 73-78).  Although he was employed as a roofer during the summers of 2001, 2002, and 2003, Mr. Bowles alleged a disability onset date of June 1, 2000 due to chronic bursitis of the right hip, arthritis of the spine, Hepatitis C, chronic sinusitis, emphysema, chronic depression, and anxiety.  (Id.; T. 138).  The application for disability benefits was denied by the Administration in a notice dated January 22, 2004.  (T. 58-61).

Mr. Bowles requested a hearing, which was held before Administrative Law Judge Karl

3

Alexander on August 23, 2004. (T. 25-28). On December 3, 2004, ALJ Alexander issued a decision denying Mr. Bowles's claim for disability benefits. (T. 12-24). The ALJ's decision became the final decision of the Commissioner on February 3, 2005, when the Social Security Appeals Council denied Mr. Bowles's request for review. (T. 6-8).

## IV.     DECISION OF THE ADMINISTRATIVE LAW JUDGE

The Social Security Act (the "Act") authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with "disabilities." For both types of benefits, the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

An administrative law judge must follow a five-step sequential evaluation process when considering a claim for disability benefits. 20 C.F.R. §§ 404.1520, 416.920; *see also Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). The determination of a claimant's request for benefits should therefore proceed as follows:

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called

4

> "vocational factors" (the claimant's age, education, and past work
> experience), and to determine whether the claimant is capable of
> performing other jobs existing in significant numbers in the national
> economy.

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citations omitted).

In the present case, ALJ Alexander followed the five-step sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Mr. Bowles had not engaged in substantial gainful activity since his alleged onset date of June 1, 2000. (T. 17). At step two, ALJ Alexander concluded that the claimant's chronic right-sided greater trochanteric bursitis, status post multiple surgeries, chronic lumbar strain, chronic sinusitis, mild obstructive airway disease, major depressive disorder, and anxiety disorder were "severe impairments" within the meaning of the Social Security Regulations (the "Regulations"). (Id.). *See* 20 C.F.R. §§ 404.1520(c), 416.920(b). At the third step of his analysis, the ALJ determined that Mr. Bowles's impairments did not meet or medically equal, alone or in combination, any of the impairments listed in Appendix 1 of the Regulations. (T. 18) *See* 20 C.F.R. Pt. 404, Subpt. P, Appendix 1. At step four, ALJ Alexander found that Mr. Bowles was unable to perform any of his past relevant work as a roofer. (T. 18).

At the fifth step, the claimant has shown his disability, and "the burden . . . shifts to the [Commissioner] to prove . . . that the claimant is capable of working." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). Here, ALJ Alexander relied upon Mr. Bowles's age, educational background, work experience, and residual functional capacity in reaching a conclusion at step five of the analysis. (T. 21-22). The ALJ also found support in the testimony of a vocational expert, who indicated that an individual with Mr. Bowles's specific work restrictions would be capable of successfully adjusting to work that exists in significant numbers in the national

economy. (T. 22-23). In light of Medical-Vocational Rule 202.18, ALJ Alexander determined that Mr. Bowles retained the capacity for a significant range of light work, but (1) required a sit/stand option; (2) could walk only on level/even surfaces; (3) could occasionally perform all postural movements, except climbing ladders, ropes, or scaffolds; (4) should not be exposed to temperature extremes, humidity, or environmental pollutants; (5) should work in a low stress environment with no "production line type of pace" and no independent decision making responsibilities; (6) was limited to unskilled work involving routine and repetitive instructions and tasks and not requiring any reading or writing; and (7) should have no more than occasional interaction with others. The ALJ ultimately concluded that Mr. Bowles retained the capacity to perform work that exists in significant numbers in the national economy and was therefore not under a disability as defined by the Social Security Act. (T. 23).

## V.     THE REPORT AND RECOMMENDATION

The Court referred this case to United States Magistrate Judge Gustave J. DiBianco for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(d). Magistrate Judge DiBianco concluded that (1) the ALJ's rejection of Dr. Christina Yambo's February 20, 2004 medical source statement was supported by substantial evidence; (2) the ALJ's decision to reject the claimant's subjective complaints of pain was supported by substantial evidence; (3) the ALJ adequately included the plaintiff's physical and mental limitations when posing hypothetical questions to the vocational expert; and (4) substantial evidence existed within the administrative record to support the ALJ's determination of non-disability. Accordingly, Magistrate Judge DiBianco recommended that the Court affirm the Commissioner's decision, and dismiss the complaint.

Presently before the Court are the claimant's objections to the Report and Recommendation. When a party timely objects to a magistrate judge's recommendation, the Court will conduct a *de novo* review of the objected-to portions. 28 U.S.C. § 636(b)(1). After performing its review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b).

## VI.   DISCUSSION

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shaw*, 221 F.3d at 131. "To determine whether findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983). The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

The claimant objects to two aspects of Magistrate Judge DiBianco's analysis, and requests that the Court reject the Report and Recommendation and award the claimant disability benefits without remanding this case to the Commissioner. Specifically, Mr. Bowles argues that the magistrate judge erred in finding that the administrative decision was supported by substantial evidence because the ALJ failed to adequately consider the claimant's significant psychological and physical limitations when making a determination of non-disability. Mr.

7

Bowles also insists that the magistrate judge applied an incorrect legal standard in connection with the ALJ's application of the treating physician rule.  Because the claimant's objections are limited to these issues, the Court adopts all other portions of Magistrate Judge DiBianco's Report and Recommendation without further review.

### A.      Substantial Evidence

#### 1.      Psychological Impairment

According to Mr. Bowles, the ALJ ignored substantial evidence of the claimant's significant psychological problems when determining his capacity to perform work.  In support of his argument, the claimant points to the report of psychologist Kristen Barry, Ph.D., who performed a consultative examination of Mr. Bowles on July 20, 2000.  Dr. Barry's report indicated that Mr. Bowles "has a long history of poor judgment and substance abuse."  (T. 200).  She also noted, however, that the claimant "at this time is able to follow and understand simple directions and instructions," and "is able to maintain his attention and concentration . . . ."  (T. 201).  Dr. Barry found that Mr. Bowles exhibited fair judgment at the time of his exam, and that his recent and remote memory skills were intact.  (T. 200).

Contrary to the claimant's assertions, the ALJ did not ignore Dr. Barry's evaluation, but specifically relied upon her report when assessing Mr. Bowles's residual functional capacity.  The ALJ's decision accurately cites Dr. Barry's findings that the claimant's "attention, concentration, and memory ranges were all intact."  (T. 20).  In addition, ALJ Alexander found support in Dr. Barry's statement that Mr Bowles "could do simple work and maintain attention and concentration sufficiently for that purpose."  (T. 20).  Dr. Barry's report is consistent with a conclusion that the claimant retained the residual functional capacity to perform a range of light

8

work, but "should work in a low stress environment with no production line type of pace or independent decision making responsibilities [and] is limited to unskilled work involving routine and repetitive instructions and tasks and not requiring any reading or writing . . . ." (T. 23-24). Thus, it is clear that the ALJ adequately considered Dr. Barry's psychological evaluation when evaluating Mr. Bowles's assertion of disability.

The claimant also alleges that the ALJ did not properly consider the report of Jeanne Shapiro, Ph.D., who performed a consultative psychological examination of Mr. Bowles on November 24, 2003. (T. 308-312). According to Dr. Shapiro, Mr. Bowles would "have difficulty adequately understanding and following some instructions and directions as well as completing some tasks due to attention and memory deficits . . . ." (T. 311). Dr. Shapiro concluded that Mr. Bowles would "have difficulty interacting appropriately with others" and probably could not "consistently attend or concentrate." (Id.). She further stated that "attending work or maintaining a schedule would be difficult given [the claimant's] lack of motivation and lethargy." (Id.).

There is substantial evidence in the record to support ALJ Alexander's conclusion that Dr. Shapiro's consultative psychological evaluation of Mr. Bowles was not entitled to "much weight at all." The ALJ stated that Dr. Shapiro "clearly accepted all of the claimant's subjective statements at face value." Given ALJ Alexander's prior conclusion that Mr. Bowles was not entirely credible, it was appropriate to reject an evaluation based solely upon the claimant's subjective statements.[1] In addition, ALJ Alexander viewed Dr. Shapiro's conclusions as "vague

---

[1] The ALJ determined that Mr. Bowles was not entirely credible due to inconsistencies between his statements and other substantial evidence in the record. These inconsistencies included: (1) contradictory statements regarding his use of drugs and alcohol; (2) his collection of unemployment due to seasonal roofing work; and (3) his continued ability to work on roofs while simultaneously claiming he had disabling pain, confusion, depression, and

and of very little use." Consequently, the Court finds that the ALJ's rejection of Dr. Shapiro's evaluation was supported by substantial evidence.

### 2. Physical Impairment

Mr. Bowles contends that the ALJ gave insufficient consideration to his physical limitations resulting from chronic recurrent trochanteric bursitis, Hepatitis C, lumbar radiculopathy, and osteoarthritis. ALJ Alexander, however, explicitly acknowledged that the claimant had a severe impairment resulting from "chronic right greater trochanteric bursitis" and "chronic lumbar strain." (T. 17). The ALJ's determination that Mr. Bowles "requires a sit/stand option; should do all walking on level/even surfaces; [and] can perform all postural movements occasionally, except climb ladders, ropes, or scaffolds" adequately accommodates any physical limitations resulting from the claimant's lower back and right knee pain.

Furthermore, although the record contains numerous references to Mr. Bowles's history of Hepatitis C, there are no indications that he suffered any symptoms related to this illness. Instead, the claimant's medical records state that he "was never considered for any type of therapy for Hepatitis C" and that his liver function tests were normal. (T. 511-512). Based upon the objective evidence, there is no reason to conclude that Mr. Bowles experienced any physical symptoms or limitations due to his history of Hepatitis C. The Court therefore finds that the ALJ adequately considered all of the physical ramifications of Mr. Bowles's impairments when determining his residual functional capacity, and denies the claimant's first objection in its entirety.

---

fatigue. The ALJ also concluded that the claimant was not entirely credible due to his "drug seeking behavior." Magistrate Judge DiBianco found that ALJ Alexander's credibility analysis was supported by substantial evidence, and Mr. Bowles has not objected to that finding.

**B.     Treating Physician Rule**

ALJ Alexander determined that the physical limitations treating internist Dr. Christina Yambo set forth in a medical source statement dated February 20, 2004 (the "February Statement") were not entitled to controlling weight.  The magistrate judge found that the ALJ did not violate the treating physician rule by rejecting Dr. Yambo's opinion in this regard.  Mr. Bowles insists, however, that ALJ Alexander and Magistrate Judge DiBianco applied the wrong legal standard, and thereby failed to give the proper weight to Dr. Yambo's February statement. In addition, Mr. Bowles claims that the ALJ erred by failing to use the limitations set forth in Dr. Yambo's February Statement when posing hypothetical questions to the vocational expert. Finally, the claimant argues that the ALJ improperly ignored the medical opinion of Dr. Glenn Axelrod, whom he classifies as a "treating physician."  The Court finds Mr. Bowles's arguments without merit.

An ALJ's evaluation of a treating doctor's medical opinion is governed by the "treating physician rule."  20 C.F.R. § 404.1527(d)(2).  As specified in the regulations, the opinion of the claimant's treating doctor is considered controlling as to the nature and severity of a claimant's impairment, provided it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . ."  20 C.F.R. § 404.1527(d)(2); *see also Schaal v. Apfel,* 134 F.3d 496, 503 (2d Cir. 1998).  A treating physician's opinion is binding unless contradicted by other medical evidence or by "overwhelmingly compelling" non-medical evidence.  *Brown v. Apfel*, 991 F. Supp. 166, 171 (W.D.N.Y. 1998).

When substantial evidence in the record conflicts with a treating physician's opinion, that

11

opinion will not be given controlling weight. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). However, under the applicable regulations, the Administration is required to explain the weight it gives to the opinions of a treating physician. *See* 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). In determining the authoritative value of a non-controlling medical opinion, the ALJ must consider: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) any other relevant factors. *Id.*; *see also Schaal*, 134 F.3d at 503. Omission of this analysis is considered failure to apply the proper legal standard, and is grounds for reversal of the Commissioner's determination. *Schaal*, 134 F.3d at 505.

ALJ Alexander concluded that Dr. Yambo's statement regarding the claimant's physical limitations was inconsistent with both the substantial evidence and with Dr. Yambo's own treatment notes. (T. 21). The February Statement indicated that Mr. Bowles could occasionally and frequently carry a weight of ten pounds, could stand for less than two hours in an eight hour workday, could sit for less than six hours during an eight hour workday, and would have a limited ability to push or pull with his lower extremities. (T. 334-335). Dr. Yambo's report also stated that the claimant could occasionally climb and frequently balance, kneel, crouch, crawl, and stoop. (T. 335). According to Dr. Yambo's statement, these physical limitations were all caused by the chronic bursitis in Mr. Bowles's right hip.

The ALJ found that Dr. Yambo did not have any clinical evidence upon which to base her conclusions regarding the physical limitations associated with the claimant's chronic bursitis.

12

Although Dr. Yambo treated the claimant on many different occasions, she never examined or addressed the symptoms related to the pain in Mr. Bowles's right hip. (T. 351, 357, 362, 378, 398). As Magistrate Judge DiBianco observed, Dr. Yambo's clinical notes explicitly stated that she was not treating Mr. Bowles's hip pain. (T. 379). It was therefore not erroneous for the ALJ to conclude that Dr. Yambo's own treatment records did not support the limitations set forth in the February Statement.

ALJ Alexander also found that Dr. Yambo's February Statement was not supported by any other evidence in the administrative transcript. In support of his conclusion, the ALJ cited the medical records provided by Dr. Patricia Eaton, an emergency room physician who treated the claimant's hip pain on several occasions. (T. 455-456; 464; 467-468). After examining Mr. Bowles on February 15, 2004 and on May 10, 2004, Dr. Eaton noted that there was no recent trauma to Mr. Bowles's hip, and no warmth or swelling in the joint. (T. 455; 464). On both occasions, Mr. Bowles indicated diffuse pain to palpation of his right hip, but had full range of motion in the hip and no pain with movement. (Id.).

Dr. Eaton's findings are consistent with those of Dr. Stephen C. Robinson, the claimant's treating orthopedic specialist. Dr. Robinson examined the claimant in December of 2003, and found no swelling or erythema. He noted that Mr. Bowles had "good" range of motion with "minimal discomfort." (T. 387).

In addition, the report of orthopedic specialist Dr. Kalyani Ganesh contradicts Dr. Yambo's February Statement. After performing a consultative examination of Mr. Bowles on November 24, 2003, Dr. Ganesh found that he had "no gross limitation" in sitting or standing, whereas Dr. Yambo determined that the claimant could stand for less than two hours and sit for

13

less than six hours during an eight hour work day.  (T. 305).  Dr. Ganesh also concluded that the claimant would have "minimal to mild limitation to walking or climbing," which is in direct opposition to Dr. Yambo's statement that he could walk for less than two hours during an eight hour workday and would only be able to climb on an occasional basis.  (Id.).

ALJ Alexander properly rejected Dr. Yambo's statement regarding the claimant's physical limitations because her opinion was not supported by any clinical findings, nor was it consistent with the substantial evidence.  The ALJ conducted the required analysis in determining the evidentiary value of the February Statement, stating that, despite her ongoing treatment relationship with Mr. Bowles, Dr. Yambo had no evidence in support of her opinion regarding the claimant's physical limitations.  Moreover, Dr. Yambo's determination of the claimant's physical limitations was in direct opposition to medical evidence given by other examining physicians.  Because he properly rejected the February Statement, ALJ Alexander did not err in failing to utilize the limitations listed therein as a basis for his hypothetical questions to the vocational expert.  The Court therefore adopts Magistrate DiBianco's Report and Recommendation in favor of the ALJ's analysis.

Mr. Bowles further asserts that the ALJ committed error by "ignoring" the opinion of orthopedic surgeon Dr. Glenn Axelrod, who the claimant classifies as a "treating physician."  Dr. Axelrod is a member of the Syracuse Orthopedic Specialists practice where Mr. Bowles received ongoing orthopedic treatment from Dr. Stephen Robinson and from Amy Gemelli, RPAC.  (T. 189-196, 271-272, 273-279, 387; 293A-300).  On February 7, 2003 and May 2, 2003, Ms. Gemelli examined the claimant, and Dr. Axelrod signed her treatment notes, which stated that Mr. Bowles was "temporarily totally disabled," as the "supervising physician."  (T. 293A-295;

14

299).

The Second Circuit has defined the term "treating physician" as the claimant's "own physician . . . who has provided the individual with medical treatment or evaluation, and who has or had an ongoing treatment and physician-patient relationship with the individual." *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988); *see also Jones v. Apfel*, 66 F. Supp. 2d 518, 525 (S.D.N.Y. 1999). In this case, Dr. Axelrod merely reviewed the claimant's chart on two occasions after Ms. Gemelli examined and treated Mr. Bowles. There is no evidence that Dr. Axelrod personally evaluated or treated the patient, nor is there support for a conclusion that Dr. Axelrod had an ongoing relationship with Mr. Bowles. Therefore, he does not qualify as a "treating physician," and the ALJ did not commit error in failing to give Dr. Axelrod's opinion controlling weight.

Furthermore, the treatment notes signed by Dr. Axelrod are not inconsistent with ALJ Alexander's determination regarding the claimant's residual functional capacity. According to the May 2, 2003 and February 21, 2003 reports, Mr. Bowles denied "fracture, sprains, pain, swelling, stiffness, [or] arthritis." (T. 293A; 296). During his February visit, the claimant indicated that a previous injection "helped him for several weeks, then [his condition] got bad again and now it is good again." (T. 297). On examination, Mr. Bowles had a negative "Flip sign," had no tenderness in the bursa with palpation, and exhibited full range of motion of the hip without any difficulty. (Id.). In May of 2003, Mr. Bowles reported "having improvement since his last surgery, just some mild pain," and further stated that he was "working and [was] okay with that." (T. 294). When examined, the claimant demonstrated the ability to ambulate without a limp and was less tender over the greater trochanteric bursa than he had been

15

previously. (Id.). Thus, although the February and May treatment notes provide a conclusory statement that the claimant was temporarily totally disabled, the actual clinical findings support a decision that Mr. Bowles had improved to the point where he could perform light work with the restrictions specified by the ALJ. The Court accordingly finds that there was substantial evidence to support the ALJ's determination and adopts the magistrate judge's recommendation in favor of the Commissioner.

## VII.  CONCLUSION

After careful consideration of Magistrate Judge DiBianco's Report and Recommendation, the plaintiff's objections thereto, the entire administrative record, and the applicable law, and for the reasons set forth herein, it is hereby

**ORDERED** that Magistrate Judge DiBianco's Report and Recommendation, dated July 20, 2006, is **ACCEPTED** in its entirety;

**ORDERED** that the defendant's motion for judgment on the pleadings is **GRANTED**; and

**ORDERED** that the plaintiff's complaint is **DISMISSED**.

**IT IS SO ORDERED**.

**DATED:**   November 30, 2007
            Syracuse, New York

_Norman A. Mordue_
Norman A. Mordue
Chief United States District Court Judge